UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SONG WANG,<br><br>Petitioner,<br><br>v.<br><br>JERI BOE,<br><br>Respondent. | Case No. C20-209-JLR-MLP<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Song Wang is a state prisoner who is currently confined at the Clallam Bay Corrections Center in Clallam Bay, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2017 King County Superior Court judgment and sentence. (Dkt. # 3.) Respondent has filed an answer responding to Petitioner's federal habeas claims and has submitted relevant portions of the state court record. (Dkt. ## 6, 7.) Petitioner has not filed a response to Respondent's answer. This Court, having carefully reviewed Petitioner's petition for writ of habeas corpus, Respondent's answer, and the balance of the record, concludes that the petition should be denied and this action should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's convictions as follows:

> Around 9:00 p.m. on March 31, 2015, when responding to a fire alarm, Bellevue firefighters found the body of [Kittaporn] Saosawatsri in her apartment. They also found a pile of smoldering clothes in Saosawatsri's closet. Saosawatsri was found kneeling over her bed with multiple superficial stab wounds on her front and back, along with defensive wounds on her arms. The medical examiner determined Saosawatsri died from two stab wounds to her chest. The police found jewelry, shoes, and handbags strewn around the kitchen and outside the closet.
>
> Video surveillance in Saosawatsri's building showed a white Cadillac Escalade entering the building garage at 7:35 p.m. on March 31, 2015. The video showed a male, later identified as Wang, walking up the garage ramp. At the same time, Saosawatsri buzzed someone into the building. Video surveillance showed Wang entering the building and getting off the elevator on Saosawatsri's floor. Shortly before 9:00 p.m., video surveillance showed Wang exiting the garage with a large bag.
>
> During the investigation, the police learned Saosawatsri was engaged in prostitution. Police connected Wang to a phone used to contact Saosawatsri the day of the murder.
>
> The State charged Wang with first degree premeditated murder, first degree felony murder, and first degree arson.
>
> Following the trial, the jury convicted Wang of first degree felony murder, first degree arson, and the lesser included offense of second degree intentional murder under the first degree premeditated murder charge. During sentencing, the court vacated the second degree murder conviction to avoid double jeopardy.

(Dkt. # 7, Ex. 3 at 3-4.)

## III.  PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals. (*See id*., Exs. 4-6.) Petitioner presented the following six issues to the Court of Appeals for review:

> 1. The State presented insufficient evidence of felony murder based on robbery.

REPORT AND RECOMMENDATION - 2

      2.      The jury instruction defining robbery misstated the law, relieved the State of its burden to prove all elements of felony murder based on robbery beyond a reasonable doubt, and thereby denied Song Wang a fair trial.

      3.      The trial court erred in excluding defense evidence pertaining to law enforcement's failure to investigate other suspects of the crime.

      4.      The State's lead detective repeatedly told jurors her personal belief that Wang committed the murder, expressing an improper opinion on guilt and thereby depriving Wang of a fair trial.

      5.      Prosecutorial misconduct in closing argument—expressing confidence that the jury "will do the right thing"—deprived Wang of a fair trial.

      6.      Cumulative error denied Wang a fair trial.

(*Id.*, Ex. 4 at 1.) On August 27, 2018, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions. (*Id.*, Ex. 3.)

Petitioner thereafter filed a petition for review in the Washington Supreme Court. (*Id.*, Ex. 7.) Petitioner identified in his petition the following three issues for review:

      1.      Is the Court of Appeals bound to follow the opinions of the Washington Supreme Court regardless of subsequent history?

      2.      To establish robbery, the State is required to prove the use of force-in this case, homicide-was intended for the purpose of obtaining or retaining the decedent's properly. The circumstances of the murder remain unknown. Moreover, mere financial difficulties, even serious ones, do not supply an inference of the intent to rob. Where no reasonable trier of fact could have found a robbery, must Wang's felony murder conviction be reversed and dismissed with prejudice?

      3.      Although the State was required to prove beyond a reasonable doubt that Wang used force for the purpose of obtaining or retaining the decedent's property, the jury was instructed that whenever a taking of property and a homicide are "part of the same transaction," a robbery has been committed. Even if the evidence were sufficient to sustain a felony murder conviction based on robbery, is reversal and remand for retrial required in light of the burden-relieving robbery instruction?

REPORT AND RECOMMENDATION - 3

(*Id.*, Ex. 7 at 1.) The Supreme Court denied Petitioner's petition for review without comment on January 9, 2019, and the Court of Appeals issued its mandate terminating direct review on February 8, 2019. (*Id.*, Exs. 8, 9.) Petitioner now seeks federal habeas review of his felony murder conviction.

## IV.     GROUNDS FOR RELIEF

Petitioner identifies the following four grounds for relief in his federal habeas petition:

GROUND ONE:     The State presented insufficient evidence of felony murder predicated on robbery, i.e., failed to prove robbery, thus, failed to prove that the victim's death occurred in the course or furtherance of a robbery. Thus, violating Amendment 6 and 14 of the United States Constitution.

GROUND TWO:     The trial court's erroneous robbery instruction eased the State's burden of proof and thereby denied Wang Due Process of Law. Thus, violat[ing] Amendment 6 and 14 of the United States Constitution.

GROUND THREE:   The trial court erroneously excluded evidence of law enforcement's failure to investigate other suspects. Thus, violating Amendment 6 and 14 of the United States Constitution.

GROUND FOUR:    The lead detective improperly gave her repeated opinion to the jury that Wang committed the murder. Thus, violating Amendment 6 and 14 of the United States Constitution.

(Dkt. # 3 at 5, 7, 8, 10.)

## V.     DISCUSSION

Respondent asserts in his answer that Petitioner properly exhausted some, but not all, of his grounds for federal habeas relief. (Dkt. # 6 at 4, 13, 15 n.2, 24 n.3.) Specifically, Respondent concedes that Petitioner properly exhausted his state court remedies with respect to his first and second grounds for relief, to the extent those claims allege a violation of his due process rights. (*Id.*) Respondent argues, however, that Petitioner failed to properly exhaust his first and second grounds for relief, to the extent those claims allege violations of his Sixth Amendment rights,

REPORT AND RECOMMENDATION - 4

because no such claims were presented to the state courts, and that Petitioner failed to properly exhaust his third and fourth grounds for relief because no such claims were presented to the Washington Supreme Court. (*See id.*) Respondent further argues that the Sixth Amendment claims asserted by Petitioner in his first and second grounds for relief, and the entirety of his third and fourth grounds for relief, are now procedurally barred in the state courts and are thus procedurally defaulted for purposes of federal habeas review. (*Id.* at 13-14,15 n.2, 24 n.3.)

Finally, Respondent argues that Petitioner is not entitled to relief in this federal habeas action with respect to his two exhausted claims because the state court's adjudication of the claims was not contrary to, nor did it constitute an unreasonable application of, clearly established United States Supreme Court precedent, nor was the decision based on an unreasonable determination of the facts. (*See id.* at 15-29.)

**A.      Exhaustion and Procedural Default**

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v.*

REPORT AND RECOMMENDATION - 5

*Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims. *Id*. "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). A habeas petitioner who fails to meet a state's procedural requirements for presenting his federal claims deprives the state courts of the opportunity to address those claims in the first instance. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Petitioner asserts in his first ground for relief that the state presented insufficient evidence of felony murder predicated on robbery, thereby violating his rights under the Sixth and Fourteenth Amendments. (Dkt. # 3 at 5.) Petitioner asserts in his second ground for relief that the trial court's robbery instruction was erroneous and, thus, eased the state's burden of proof, thereby violating his rights under the Sixth and Fourteenth Amendments. (*Id*. at 7.) Though Petitioner presented both his first and second grounds for relief to the state courts on direct appeal, he argued those claims only with reference to due process principles which implicate Petitioner's Fourteenth Amendment rights, but not his Sixth Amendment rights. (*See* Dkt. # 7, Ex. 4 at 15-32; Ex. 7 at 6-20.) Thus, to the extent Petitioner asserts that the errors alleged in his first and second grounds for relief violated his Sixth Amendment rights, his claims have not been properly exhausted.

Petitioner asserts in his third ground for relief that the trial court erroneously excluded evidence of law enforcement's failure to investigate other suspects, thereby violating his rights under the Sixth and Fourteenth Amendments. (Dkt. # 3 at 8.) Petitioner asserts in his fourth ground for relief that the lead detective in his case, during her trial testimony, improperly offered her opinion that Petitioner was responsible for the murder of Ms. Saosawatsri, thereby violating

REPORT AND RECOMMENDATION - 6

his rights under the Sixth and Fourteenth Amendments. (*Id*. at 10.) While Petitioner presented both his third and fourth grounds for relief to the Washington Court of Appeals on direct appeal, Petitioner did not present those claims to the Washington Supreme Court in his petition for review. (*See* Dkt. # 7, Exs. 4, 7.) Thus, Petitioner's third and fourth grounds for relief have not been properly exhausted.

When a petitioner fails to exhaust his state court remedies and the court to which the petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman*, 501 U.S. at 735 n.1. Respondent argues that Petitioner, having failed to properly exhaust portions of his first and second grounds for relief, and the entirety of his third and fourth grounds for relief, would now be barred from presenting those claims to the state courts under RCW 10.73.090. (*See* Dkt. # 6 at 13-14, 15 n.2, 24 n.3.)

RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's judgment became final for purposes of state law on February 8, 2019, the date the Court of Appeals issued its mandate terminating direct review. *See* RCW 10.73.090(3)(b). It therefore appears clear that Petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090. This Court therefore concludes that Petitioner has procedurally defaulted on the portions of his first and second grounds for relief alleging violations of the Sixth Amendment, and on his third and fourth grounds for relief in total.

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred

REPORT AND RECOMMENDATION - 7

unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750.

To satisfy the "cause" prong of the cause and prejudice standard, a petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

Petitioner makes no effort to show cause or prejudice for his default, nor does he make any showing that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. Petitioner therefore fails to demonstrate that his unexhausted claims are eligible for federal habeas review. Accordingly, Petitioner's federal habeas petition should be denied with respect to the portions of his first and second grounds for relief alleging violations of the Sixth Amendment, and with respect to his third and fourth grounds for relief in total.

**B.    Standard of Review for Exhausted Claims**

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if

REPORT AND RECOMMENDATION - 8

the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

REPORT AND RECOMMENDATION - 9

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**C.     Analysis**

   *1.     Sufficiency of the Evidence*

Petitioner asserts in his first ground for relief that the State presented insufficient evidence of felony murder predicated on robbery. (Dkt. # 3 at 5.) More specifically, Petitioner asserts that the State failed to prove robbery and, thus, failed to prove that the victim's death occurred in the course of, or in furtherance of, a robbery. (*Id.*)

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *In re: Winship*, 397 U.S. 358, 364 (1970)). Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court explained in *Jackson* that the relevant question in evaluating a claim of insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. The Supreme Court has made clear that it is the

REPORT AND RECOMMENDATION - 10

responsibility of the jury, and not a reviewing court, to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

The Supreme Court has also made clear that sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, the Supreme Court has held that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citing *Cavazos*, 565 U.S. at 2).

The Washington Court of Appeals rejected Petitioner's sufficiency of the evidence claim on direct appeal, explaining its conclusion as follows:

> To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask whether any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt.[1] "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'"[2]
>
> A person is guilty of murder in the first degree when:
>
> He or she commits or attempts to commit the crime of either (1) robbery in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first or second degree, or (5) kidnapping in the first or second degree, and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.[3]
>
> Here, the State alleges Wang caused Saosawatsri's death in the course of or in furtherance of second degree robbery.
>
> A person commits robbery when:

---

[1] [Court of Appeals footnote 4] *State v. Elmi*, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[2] [Court of Appeals footnote 5] *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (quoting *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254 (1980)).

[3] [Court of Appeals footnote 6] RCW 9A.32.030(1)(c).

REPORT AND RECOMMENDATION - 11

> [H]e or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.[4]

"Intent to deprive the victim of the property is a necessary element of the offense of robbery."[5]

"To establish that a killing occurred in the course of, in furtherance of, or in immediate flight from a felony, there must be an 'intimate connection' between the killing and the felony."[6] Specifically, the State must prove "that the death was a probable consequence of the felony and must specifically prove that the felony began before the killing."[7]

Wang argues the State presented insufficient evidence that the use of force related to his taking of Saosawatsri's property. He contends it is just as likely "that the taking of property was an afterthought to the killing."[8]

. . . .

[W]hen the evidence in this case is viewed in a light most favorable to the State, there is a reasonable inference that Wang killed Saosawatsri with the intent to take her property.

The State presented evidence that Wang used a phone application to make calls via the internet rather than a regular cellular service provider. Wang created the account he used to communicate with Saosawatsri on the day of the murder, March 31, 2015. On the same day, Wang contacted numerous medium-priced prostitutes. One of the State's law enforcement witnesses testified that escorts often have "large sums of cash" and "are less likely to report" a robbery.[9] This

---

[4] [Court of Appeals footnote 7] RCW 9A.56.190.

[5] [Court of Appeals footnote 8] *State v. Quillin*, 49 Wn. App. 155, 164-65, 741 P.2d 589 (1987).

[6] [Court of Appeals footnote 9] *State v. Brown*, 132 Wn.2d 529, 607-08, 940 P.2d 546 (1997).

[7] [Court of Appeals footnote 10] *State v. Irby*, 187 Wn. App. 183, 201, 347 P.3d 1103 (2015).

[8] [Court of Appeals footnote 11] Appellant's Br. at 20.

[9] [Court of Appeals footnote 20] RP (Dec. 7, 2016) at 1172-74.

REPORT AND RECOMMENDATION - 12

evidence supports a reasonable inference that Wang targeted a victim with property who was unlikely to call the police.

The State presented evidence of Wang's financial despair. On March 23, 2015, Wang's business partner texted Wang about people who were trying to locate Wang to collect debts. Wang responded, "Tell me a way to make fast money."[10] Wang's business partner also previously loaned Wang money to assist with his financial difficulties.

On March 21, 2015, Wang stole his ex-girlfriend's white Cadillac Escalade.[11] Wang's ex-girlfriend had previously helped Wang pay off a $17,000 business loan. The relationship ended after she discovered Wang's significant gambling debt. And Wang defrauded at least two other people.

The State also presented evidence concerning Wang's use of force and taking Saosawatsri's property. The medical examiner testified that Saosawatsri had a number of superficial stab wounds on her front and back, along with defensive wounds on her arms. Saosawatsri had two fatal stab wounds to her chest. The police found jewelry, shoes, and handbags strewn around the kitchen and outside the closet. And Wang was seen on video surveillance leaving Saosawatsri's apartment with a full bag.

On April 1, 2015, the day after the murder, Wang contacted two Portland consignment stores and attempted to sell an expensive woman's handbag. At the first store, Wang turned down an offer of $405 for the bag "because it wasn't enough for the item."[12] At the second store, the manager refused to buy the handbag from Wang because she suspected it was stolen. Wang returned to the first store but refused to sell when he learned he would receive a check rather than cash.

When the evidence is viewed in a light most favorable to the State, there is a reasonable inference that Wang intended to take Saosawatsri's property at the time he walked into her apartment and before he began to use force culminating in her death. The State did not merely show Wang had financial difficulties. Rather, the State presented evidence of Wang's accelerating financial difficulties in the days leading up to the murder, his desperation to resolve these problems, and his targeting of prostitutes who were likely to have cash and were unlikely to call the police. Accordingly, we conclude the State presented sufficient evidence to support Wang's first degree felony murder conviction.

---

[10] [Court of Appeals footnote 21] RP (Dec. 13, 2016) at 1576.

[11] [Court of Appeals footnote 22] A white Cadillac Escalade was seen at Saosawatsri's apartment on the day of the murder.

[12] [Court of Appeals footnote 23] RP (Dec. 8, 2016) at 1354-55.

REPORT AND RECOMMENDATION - 13

(Dkt. # 7, Ex. 3 at 4-9.)

Petitioner offers no argument in support of his first ground for relief, he merely cites to the trial testimony of the Bellevue Police Department detective assigned as the crime scene manager, Detective Hoover, who described items he observed in the victim's apartment during his initial walk-through of the scene and items discovered during a more thorough search of the apartment by other officers. (*See* Dkt. # 3 at 5.) Among the items observed by Detective Hoover were a small box containing religious items as well as open bags/purses that were sitting on the kitchen counter. (Dkt. # 7, Ex. 15 at 680.) He also observed approximately a dozen shoeboxes on the floor of the living room and the living room closet, many of which were open. (*Id*.) Detective Hoover opined that based on what he observed during his walk through it "looked like somebody was looking for something." (*Id*., Ex. 15 at 683-84.)

Detective Hoover also described other items that were discovered during the search of the apartment, including the victim's wallet, credit/debit cards, and $1200 cash, all of which were found underneath the refrigerator, (dkt. # 7, Ex. 15 at 689-90), a small digital camera found in an unopened purse (*id*., Ex. 15 at 691-92), two laptop computers found inside a suitcase in the bedroom closet (*id*., Ex. 15 at 693-94), an iPhone and another credit card/gift card found between the mattress and box-spring (*id*.), and a Microsoft Surface found underneath the bed just below where the victim's body was located (*id*., Ex. 15 at 694).

Petitioner appears to suggest that the fact that a number of high-value items were found in the apartment after the murder undermines the conclusion that a robbery had occurred. However, all of the evidence described above was before the jury, including the types of items that were found and the fact that the high-value items found by police were, for the most part, hidden from plain view. The jury also had before it evidence that Petitioner was observed on

REPORT AND RECOMMENDATION - 14

video surveillance leaving the apartment building with a large bag on the evening of the murder, and that Petitioner attempted to sell an expensive handbag the day following the murder.

The Supreme Court has made clear that a reviewing court must be mindful of "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296-97 (1992). In *West*, the Court emphasized the deference owed to the trier of fact:

> We said [in *Jackson*] that "*all of the evidence* is to be considered in the light most favorable to the prosecution" . . . that the prosecution need not affirmatively "rule out every hypothesis except that of guilt" . . . and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*West*, 505 U.S. at 296-97 (quoting *Jackson*, 443 U.S. at 326) (citations omitted, emphasis in original).

This Court has reviewed the transcript of the testimony presented at trial and the remainder of the state court record. The record shows that the Washington Court of Appeals applied the correct standard in evaluating Petitioner's sufficiency of the evidence claim. According deference to the jury findings, and to the Court of Appeals' resolution of the claim in relation to the evidence presented at trial, this Court must conclude that the state court reasonably rejected Petitioner's challenge to the sufficiency of the evidence as there was, indeed, ample evidence in the record to support Petitioner's conviction of felony murder predicated on robbery. Petitioner's federal habeas petition should therefore be denied with respect to his first ground for relief.

REPORT AND RECOMMENDATION - 15

*2.    Erroneous Jury Instruction*

Petitioner asserts in his second ground for relief that the trial court's robbery instruction eased the State's burden of proof and thereby violated his due process rights. (Dkt. # 3 at 7.) At issue in this claim is instruction 17 which instructed the jury as follows:

> A person commits the crime of robbery in the second degree when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another who has an ownership, or possessory interest in that property, against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person. The force or fear must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which case the degree of force is immaterial. *The taking constitutes robbery, even if death precedes the taking, whenever the taking and a homicide are part of the same transaction.*

(*See* Dkt. # 7, Ex. 3 at 10.)

Instruction 17 corresponds to WPIC 37.50.[13] Petitioner challenges, in particular, the final sentence of instruction 17, as highlighted above, which is optional under WPIC 37.50. Petitioner notes in his petition that defense counsel objected to the instruction, arguing that "I think transaction is not defined. So I think it's not clear for the jury what that means. I think it's confusing." (Dkt. # 3 at 7; Dkt. # 7, Ex. 17 at 1650-51.) The trial court noted the defense objection, but gave the standard instruction as proposed by the State. (*See* Dkt. # 3 at 7; Dkt. # 7, Ex. 17 at 1651-52.) Petitioner claims that the instruction was constitutionally deficient.

A writ of habeas corpus may issue only upon a finding that a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Jeffries v. Blodgett*, 5 F.3d 1180,

---

[13] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 37.50 (4th ed. 2016).

REPORT AND RECOMMENDATION - 16

1192 (9th Cir. 1993). Accordingly, the fact that a jury instruction is incorrect under state law is not a basis for habeas relief. *Estelle*, 502 U.S. at 67-68.

Before a federal habeas court can overturn a state court conviction in which an allegedly erroneous instruction was given, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The Supreme Court has made clear that a challenged instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147.) The Supreme Court has also made clear that when reviewing an ambiguous jury instruction the proper inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The Washington Court of Appeals rejected Petitioner's claim of instructional error on direct appeal, concluding that Petitioner failed to show manifest constitutional error relieving the State of its burden of proof. The Court of Appeals observed that "[c]hronology is important in proving that a murder was committed in the course of a felony." (Dkt. # 7, Ex. 3 at 10 (quoting *State v. Irby*, 187 Wn. App. 183, 201 (2015)).) The Court of Appeals went on to explain that "[t]he State must present evidence that the death was a probable consequence of the felony and must specifically prove that the felony began before the killing." (*Id*.) The Court of Appeals acknowledged that the final sentence of WPIC 37.50 ("The taking constitutes robbery, even if death precedes the taking, whenever the taking and a homicide are part of the same transaction."), appeared to be in tension with this principle, and noted its agreement with the

REPORT AND RECOMMENDATION - 17

State's concession at oral argument that WPIC 37.50 was "potentially confusing without a definition or clarification of 'same transaction.'" (*Id.*, Ex. 3 at 10, 13.)

The Court of Appeals went on to hold, however, that

> [T]he use of the optional language did not relieve the State of its burden to prove all the elements of robbery beyond a reasonable doubt. In jury instruction 17, as in the pattern instruction, the sentence immediately preceding the final sentence correctly identified that "[t]he force or fear must be used to obtain or retain possession of the property." This accurate limiting statement alleviates any concerns that the instruction broadens the definition of robbery.
>
> Wang fails to show a manifest constitutional error relieving the State of its burden of proof when the evidence supports a reasonable inference that Wang had the intent to take property at the time he began to use force. The mere possibility that a person might commit a homicide and after the fact form the intent to take property does not render WPIC 37.50 manifestly unconstitutional on these facts.

(*Id.*, Ex. 3 at 13.)

This Court discerns nothing in the language of instruction 17, when that instruction is read as a whole, that relieved the State of its burden to prove all elements of robbery beyond a reasonable doubt. Moreover, when instruction 17 is viewed in the context of the entire trial record, there appears no reasonable likelihood that the jury understood the instruction to allow conviction based on proof insufficient to meet the *Winship* standard. The Court of Appeals reasonably rejected Petitioner's challenge to instruction 17, and Petitioner's federal habeas petition should therefore be denied with respect to his second ground for relief.

### D.    Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A

REPORT AND RECOMMENDATION - 18

petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## VI. CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

## VII. OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 31, 2020**.

DATED this 8th day of July, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19